IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KANIU HUIHUI, #12097-122,<br><br>       Petitioner,<br><br>  v.<br><br>ESTELA DERR, WARDEN,<br><br>       Respondent. | Civil No. 22-00541 JAO-RT<br><br>ORDER DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 |

**ORDER DISMISSING PETITION FOR
A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

Pro se Petitioner Kaniu Huihui ("Petitioner" or "Huihui") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"). ECF No. 1. Petitioner seeks an order directing the Federal Bureau of Prisons ("BOP") to apply her earned time credits ("ETCs") and her Good Time Credits ("GTCs") under the First Step Act ("FSA").

The Court elects to decide this matter without a hearing pursuant to Rule 7.1(c) of the Local Rules of Practice of the United States District Court for the District of Hawaii. For the reasons set forth below, the Court DISMISSES the Petition without leave to amend; however, the Court orders Respondent to comply with certain directives in this Order.


## I. STANDARD OF REVIEW

When a federal or state prisoner contends that she "is in custody in violation of the Constitution or laws or treaties of the United States," § 2241 confers a general grant of habeas jurisdiction. 28 U.S.C. § 2241(a), (c)(3). "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus[.]" *Muhammad v. Close*, 540 U.S. 749, 750 (2004). So, a petitioner challenging the manner, location, or conditions of the execution of her sentence must file a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Habeas Petition").

A court entertaining a Habeas Petition must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 USC § 2243. The district court should not dismiss a Habeas Petition "without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted." *Jarvis v. Nelson*, 440 F.2d 13, 14 (9th Cir. 1971).

## II. BACKGROUND

Petitioner has been continuously in the Federal Detention Center Honolulu ("FDC") since November 2, 2020. *See* ECF No. 13-3 at 3. She was sentenced on October 26, 2022 to 58 months' incarceration with a term of supervision to follow

for four years.  *See id.* at 2.  Factoring in 731 days of prior jail credit and projected GTCs, her statutory release date is projected for December 7, 2024.  *Id.*

Petitioner filed her Petition on December 27, 2022.  ECF No. 1.  Respondent filed her Response on February 28, 2023.  ECF No. 14.  Petitioner filed a Reply on March 9, 2023, and a Supplemental Reply on March 21, 2023.  ECF Nos. 14, 15.  In light of the arguments raised by Petitioner in her Reply and Supplemental Reply, alleging that BOP refused to give her the form necessary to start the administrative remedies process, the Court ordered Respondent to file a surreply addressing those arguments.  ECF No. 16.  Respondent filed her Surreply on May 5, 2023.  Petitioner responded to the Surreply a week later.

### III.   DISCUSSION

Petitioner seeks an order from the Court directing BOP to apply the FSA ETCs and GTCs she earned under the FSA.  She contends that if her FSA ETCs and GTCs had been applied properly, she would have already been eligible for pre-custody release.  ECF No. 1 at 1.  Respondent argues that the Court should dismiss her Petition because Petitioner must exhaust her administrative remedies before seeking habeas relief.  ECF No. 13 at 3.

It is undisputed that Petitioner has not exhausted her administrative remedies.  But Petitioner alleges that the Unit Team refused to give her the BP-8 form to begin the process.  *See* ECF No. 15 at 1.  Respondent contends in her

3

Surreply that the FDC Unit Team staff have never refused Petitioner's requests for administrative remedy forms. ECF No. 17 at 4 (citing ECF No. 17-1, Declaration of Kris Robl ("Robl Decl.")); ECF No. 17-2 Declaration of Sherry Keolanui. Petitioner then states in her Response to Respondent's Surreply that, "when I asked for a BP-8 I was told that I could not grieve anything as I was not at my destination which was Greenville, Illinois." ECF No. 18 at 2.

If resolving the issue of whether Petitioner was refused the applicable form was dispositive, the Court would order an evidentiary hearing on the matter. *See Hubbard v. Houghland*, 471 F. App'x 625, 626 (9th Cir. 2012); *Stine v. Colbert*, 2023 WL 2243081, at *2 (D. Ariz. Feb. 27, 2023). But the Court need not make any findings on this particular issue because, for the reasons discussed below, the Court concludes that pursuit of administrative remedies would be futile and thus, exercises its discretion to excuse Petitioner's failure to exhaust.

A.  **Exhaustion of Administrative Remedies**

Ordinarily, a federal prisoner must exhaust their administrative remedies before filing a federal Habeas Petition. *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991). For challenges to BOP's handling of FSA credits, BOP requires federal inmates to complete a four-step administrative-remedies process, consisting of (1) presenting the issue of concern informally to staff, *see* 28 C.F.R. § 542.13(a); (2) submitting a formal request for administrative remedies to the

facility's warden, *see id.* § 542.14(a); (3) appealing to the appropriate BOP Regional Director, *see id.* § 542.15(a); and (4) appealing to BOP's General Counsel, *see id.* The first step is carried out according to the procedures defined by each facility's warden. *See* 28 C.F.R. § 542.13(a). At FDC, the first step involves submitting a "BP-8" complaint form to prison officials. ECF No. 10-1 (Robl Decl.) at 3, ¶ 5. The second, third, and fourth steps are consistent across BOP facilities; those steps correspond to submitting forms BP-9, BP-10, and BP-11, respectively. *See* 28 C.F.R. § 542.15(a*)*.

If an inmate fails to complete all four steps of BOP's administrative-remedies process before filing a § 2241 Habeas Petition, the court should ordinarily dismiss the petition as a prudential matter. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Indeed, courts may require exhaustion if:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*United States v. Cal. Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (citing *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193–95 (1969); *Stauffer Chemical Co. v. FDA*, 670 F.2d 106, 107 (9th Cir. 1982), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014); *Montgomery v. Rumsfeld*, 572 F.2d 250, 253 (9th Cir. 1978)). On

the other hand, courts, in their discretion, may waive the exhaustion requirement in various situations, including "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks and citation omitted).

The Court concludes that the administrative remedies process is not efficacious in this case and further pursuit would be a futile gesture because, as discussed in more detail later in this Order, the Court concludes there is an error in Respondent's understanding of when Petitioner can begin earning credits under 18 U.S.C. §§ 3585(d)(4)(B) and 3632(a).

Importantly, the Court finds none of the reasons for requiring exhaustion in this case. First, any agency expertise necessary to generate a proper record and reach a proper decision has been provided in Respondent's filings. Second, although the Court is reluctant to relax the exhaustion requirement for any Habeas Petition, this case relies on a dispositive issue of law that Respondent appears to misunderstand. So the Court utilizes its discretion and decides that, under the facts of this case, relaxation of the exhaustion requirement would not encourage the deliberate bypass of the administrative scheme; rather, it would allow for appropriate clarification of the law for Petitioner and Respondent. Finally,

administrative review in this case is not likely to allow the agency to correct its own mistakes and preclude the need for judicial review because the Court disagrees with Respondent's reading of the FSA.  The Court thus concludes that any further administrative review would not preclude the need for judicial review.  The Court thus excuses Petitioner's failure to exhaust her administrative remedies.

**B.     The Merits**

Petitioner relies on three different statutes in her Petition and subsequent filings that she believes are sources of credits toward reducing her time in prison— (1) the FSA, (2) the SCA, and (3) the good time credits provision, 18 U.S.C. § 3624(b).  The Court discusses each below.

**1.     FSA Credits (Earned Time Credits)**

Under 18 U.S.C. § 3585(a), "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  So a sentence to a term of imprisonment commences on either:  (1) the date the defendant is received in custody awaiting transportation to the official detention facility at which the sentence is to be served; or (2) the date the defendant arrives voluntarily to commence service of sentence at the official detention facility at which the sentence is to be served.

Petitioner cannot begin earning FSA ETCs until she has been sentenced and imprisoned in accordance with her sentence. And even then, Petitioner can only earn 10 days of credit, not 15. She can only begin earning 15 days after she has received two consecutive assessments. *See* 18 U.S.C. § 3632(d)(4) (providing that a prisoner earns 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities and an additional five for prisoners "**who, over 2 consecutive assessments, has not increased their risk of recidivism**" (emphasis added)). So Petitioner is mistaken that she can earn FSA ETCs for the entire time she has been in prison. Petitioner cannot begin earning credits until the date of her sentence and even then, she can only earn 10 days of credit until she has received two assessments.

But the Court is concerned with a statement in Mr. Robl's declaration, which indicates that, as a pretrial or holdover inmate, Petitioner is not eligible to begin earning FSA ETCs until she is designated to a BOP facility. *See* ECF No. 13-1 (Robl Decl.) at 5 ¶ 10 ("Once designated to a BOP facility, Petitioner will begin to earn FSA Credits."). Mr. Robl is mistaken.

Petitioner was already in prison on the date she was sentenced. According to BOP, Petitioner had not yet been designated to a BOP facility at the time Respondent filed her Response. *See* Robl Decl., ECF No. 13-1 at 4–5.

Nonetheless, the Court concludes she was eligible to start earning FSA ETCs under Section 3585(a) on her October 26, 2022 sentencing date, i.e., the date Petitioner was received in custody awaiting transportation to the official detention facility at which the sentence is to be served. It does not matter that she was not at the official detention facility at which the sentence is to be served because the statute permits her to earn credits while she awaits transportation to her final detention facility.

Mr. Robl quotes 28 C.F.R. 523.42(a) in support of his contention that Petitioner cannot begin earning FSA ETCs until she is at the designated BOP facility where the sentence will be served. Indeed, 28 C.F.R. § 523.42(a) provides that "[a]n eligible inmate begins earning FSA [ETCs] after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders *at the designated Bureau facility* where the sentence will be served)." (Emphasis added). This regulation conflicts with 18 U.S.C. § 3632.

Chapter 5, Part 523 of Title 28 of the Code of Federal Regulations ("C.F.R.") provides regulations on the "Computation of Sentence." Subpart E of Part 523 is titled "First Step Act Time Credits." The purpose of Subpart E "is to describe procedures for the earning and application of Time Credits as authorized by 18 U.S.C. 3632(d)(4) and Section 101" of the FSA (Pub.L. 115-391, December 21, 2018, 132 Stat. 5194), which govern the FSA's Risk and Needs Assessment

System.  28 C.F.R. § 523(a).  But 18 U.S.C. § 3632 plainly provides when a prisoner is ineligible for FSA ETCs.  *See* 18 U.S.C. § 3632(d)(4)(B) (providing that a prisoner is ineligible for FSA ETCs before § 3632 was enacted and during official detention before the prisoner's sentence has commenced; *id*. § 3632(d)(4)(D) (listing certain provisions of law and providing that a prisoner is ineligible for FSA ETCs if serving a sentence for a conviction under any of those provisions of law).

"Because this case involves an administrative agency's construction of a statute that it administers, [the Court's] analysis is governed by *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)."  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000).  "Under the *Chevron* framework, a reviewing court first determines if Congress has directly spoken to the precise question at issue, in such a way that the intent of Congress is clear."  *Mujahid v. Daniels*, 413 F.3d 991, 997 (9th Cir. 2005) (internal quotations omitted) (quoting *Pacheco-Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2001) (quoting *Chevron*, 467 U.S. at 843 internal quotations and citations omitted)).  "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron*, 467 U.S. at 842–43.

Congress has directly spoken to the precise question of *when* a prisoner is ineligible for FSA ETCs in 18 U.S.C. § 3632(d)(4)(B), which explicitly bars a prisoner from earning credits (1) before the statute was enacted, and (2) during official detention before the prisoner's sentence commences under § 3585(a). Section 3585(a) unambiguously provides that "[a] term of imprisonment commences" when a prisoner is received in custody awaiting transportation to the official detention facility at which the sentence is to be served. 18 U.S.C. § 3585(a).

So while BOP's designation of Petitioner as a "holdover" detainee may have relevance in the context of how BOP classifies its prisoners, the classification has no bearing in determining when her sentence commences; Congress has already made that determination. In this case, Petitioner was not eligible before her sentence commenced, but under 18 U.S.C. § 3632(d)(4)(B)(ii), her ineligibility ended the moment she was sentenced under 18 U.S.C. § 3585(a) because FDC had already received her in custody and, according to BOP, she was and is still awaiting transportation to the official detention facility at which her sentence is to be served. *See Yufenyuy v. Warden, FCI Berlin*, 2023 WL 2398300, at *4 (D.N.H. Mar. 7, 2023) (relying on *Chevron* to conclude that 28 C.F.R. § 523.42(a) contradicts "the plain language of the FSA, and of § 3585(a), [which] clearly establishes the date upon which the FSA must allow prisoners to start earning FSA

11

time credits" and that "there is no ambiguity in any of the terms of § 3632(d)(4)(A) or (B), regarding when a prisoner's completion of programs will not count for purposes of earning time credits under the FSA").

The Court concludes that, unless she is ineligible for reasons other than what Mr. Robl provided, Petitioner should have been afforded an opportunity to earn FSA ETCs toward supervised release on the date she was sentenced, October 26, 2022, because she was already in BOP's custody at the time of sentencing. In section C below, the Court directs the BOP to take certain actions in this case given the Court's conclusion.

### 2. SCA Credits

In addition, it appears the parties are missing each other's points about the Second Chance Act. Petitioner believes that the SCA allows her to be released into pre-release custody for up to 12 months. *See* ECF No. 14 at 1–2. Respondent appears to be confused about Petitioner's reference to the SCA and interprets her SCA arguments as a request to be released under the SCA's elderly offender two-third's eligibility date. *See* ECF No. 17 at 2.

The Court is puzzled by Respondent's interpretation of Petitioner's SCA arguments in her Reply. The SCA does indeed contain an "Elderly and family reunification for certain nonviolent offenders pilot program." *See* 34 U.S.C. § 60541 ("the SCA Elderly Pilot Statute"); *see also Kim v. United States*, 2010 WL

2813770, at *3 (D. Haw. July 14, 2010) ("Section 231(g) of the Second Chance Act directs the Attorney General to conduct this pilot program but grants the Attorney General considerable discretion in implementing that program and determining which, if any, elderly offenders are released on home detention."). But the SCA Elderly Pilot Statute defines an "elderly offender" as an offender who is 60 years of age and older. 34 U.S.C § 60541(g)(5). Petitioner contends she is not an "elderly offender." *See* ECF No. 18 at 2. Indeed her Sentence Monitoring Computation Data provides that she is 42. ECF No. 13-3 at 2.

It appears more likely Petitioner is referring to SCA's prerelease custody provision, 18 U.S.C. § 3624(c), rather than the SCA Elderly Pilot Statute. Section 3624(c) provides that:

> The [BOP] must, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c).

The SCA is not, however, "an additional source of time 'credits.'" *Untalan v. Derr*, 2023 WL 2868519, at *4 (D. Haw. Apr. 10, 2023) (citing *Suggs v. Saad*, 2017 WL 1862468, at *5 (N.D.W. Va. May 9, 2017)). And it "does not require that an inmate receive a full twelve months of halfway house placement, only that

an inmate be considered for placement up to twelve months to the extent practicable." *Id*. (quoting *Suggs*, 2017 WL 1862468, at *5).

Hawaiʻi does not have any residential reentry centers or halfway houses so home confinement is the only option for prerelease custody and the SCA provides for only a maximum six months of home confinement for any prisoner and even less for some. A prisoner may be placed in home confinement under § 3624(c)(2) for the *shorter* of 10 percent of the term of imprisonment of that prisoner or six months. *Id*. § 3624(c)(2). So Petitioner would be eligible for approximately six months of home confinement, not the 12 months Petitioner believes she is entitled to.

### 3. Good Time Credits

Petitioner contends that she has nine months of GTCs because she has served 29 months in prison. *See* ECF No. 15 at 1. The Court finds that Petitioner is mistaken about how many days of GTCs she has earned at this point in time. *See* 18 U.S.C. § 3624 (providing a maximum of 54 days for each year of the prisoner's sentence). It appears that she is projected to earn nearly nine months, or a total of 260 days of GTCs, for the time she has and will serve in prison, and has already earned 108 days. *See* ECF No. 13-3 at 3.

GTCs under 18 U.S.C. § 3624 are different than FSA ETCs under 18 U.S.C. § 3632. The FSA implemented a number of prison and sentencing reforms

including requiring BOP to allow for 54 days of GTCs per year under Section 3624(b).  *Bottinelli v. Salazar,* 929 F.3d 1196, 1197 (9th Cir. 2019) (explaining that before the FSA was enacted, despite the statute allowing up to 54 days each year for exemplary compliance, the BOP used a calculation that allowed a maximum of only 47 days, which courts including the Supreme Court upheld as lawful).  The criteria for earning GTCs under Section 3624(b) is different than the criteria for earning FSA ETCs under 18 U.S.C. § 3632.  Under 18 U.S.C. § 3624(b)(1), BOP considers whether a prisoner has displayed exemplary compliance with institutional disciplinary regulations and also considers whether the prisoner, during the relevant period, has earned, or is making satisfactory progress toward earning, a high school diploma or an equivalent degree.

But a prisoner does not earn the credits until BOP makes a determination and then, such credit is awarded on each anniversary date of his or her imposed sentence.  28 C.F.R. § 523.20.  Because Petitioner has been imprisoned for approximately two years, the maximum she can earn at this point is 108 days of credit.  She can earn another 54 days on the anniversary date of her sentencing, October 26, 2023, provided BOP determines that the criteria in 18 U.S.C. § 3624(b)(1) has been met.  It appears that, after calculating all of her GTCs, if Petitioner remains eligible for them, she is projected to be released on December 7, 2024.  *See* ECF No. 13-3 at 3.

Because Petitioner was not eligible to earn FSA ETCs until the date of her sentencing and because GTCs are calculated at the end of each year a prisoner has served of her sentence, Petitioner is not eligible at this time to be transferred to prerelease custody. Even if she were eligible and she earned some credit since October 26, 2022, she would only be eligible for approximately 70 days of FSA ETCs at this time—10 credits (not 15 until she has received her second assessment) for the seven months she's been at the FDC since her sentencing. These are not enough credits to entitle her to be transferred to prerelease custody at this time. So the Court DISMISSES the Petition WITHOUT PREJUDICE.

### C. Recalculation of Petitioner's FSA ETCs

Although the Court dismisses the Petition, the Court is compelled to address the fact that she has not been permitted to earn FSA ETCs because she has yet to be designated to a facility. She was eligible to start earning FSA time credits on the day she was sentenced, October 26, 2022, because she was already incarcerated and in BOP's custody. The Court thus orders the following:

1.  If she has not been assessed under the FSA as of the date of this Order, the Court orders the BOP to conduct the assessment required under the FSA no later than August 1, 2023, or to file a brief explaining why she is not eligible for such assessment or why BOP cannot conduct such an assessment. If Petitioner has already had her initial assessment, BOP must conduct the second assessment as

early as practicable so she may immediately begin to start accruing 15 days if she is eligible.

2. If Petitioner has already been assessed, is eligible under the FSA, and has "successfully complete[d] evidence-based recidivism reduction programming or productive activities" under 18 U.S.C. 3632 after October 26, 2022, BOP is ordered to calculate her FSA ETCs with her sentencing date as the date she is eligible to start earning FSA ETCs.

The Court recognizes this is not a modest ask of the BOP, but it appears to the Court the prisoner has been denied the opportunity to earn credits based on BOP's misunderstanding of when she was eligible to start earning credits. Neither FDC nor this Court have control over when she will be designated to her official destination. *See* ECF No. 13-1 at 4–5 (stating that BOP's Designation and Sentence Computation Center in Grand Prairie, Texas manages all inmate designation decisions). This is not a situation in which the prisoner has been waiting for a month or two to be transferred. She has been waiting over seven months to start earning any credits. She should not have to sit and wait to start taking advantage of evidence-based recidivism reduction programming or productive activities simply because BOP's Designation and Sentence Computation Center has not yet designated her. She has been sentenced, incarcerated and is currently serving her sentence in BOP's custody at FDC. She

should not be prevented from earning FSA ETCs based on the whims of the BOP designation system.

Finally, the Court notes that, by initially addressing Petitioner's filing solely on the grounds of exhaustion and, later, the elderly offender pilot program, Respondent missed the mark. A more robust discussion of Petitioner's actual concerns would have been helpful to the Court.

## IV. CONCLUSION

The Court DISMISSES the Petition WITHOUT PREJUDICE. In addition, the Court concludes that there is no tenable claim for relief that can be pled even if this Court were to grant Petitioner leave to amend. The Court's dismissal of the Petition is thus, without leave to amend.

Although the Court dismisses the Petition, the Court nonetheless orders Respondent (and the BOP) to comply with the Court's directives in this Order. If there is any reason they cannot comply with the Order or wish to respond to the Order, Respondent must do so by July 5, 2023. To the extent Petitioner objects to any matter that was not raised in her December 27, 2022 Petition or any matter regarding BOP's handling of her credits after this Order, Petitioner must attempt to exhaust her administrative remedies before filing a petition in the Court.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, June 20, 2023



Jill A. Otake
United States District Judge

Civil No. 22-00541 JAO-RT; *Huihui v. Derr*; ORDER DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241