IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KANIU HUIHUI,<br>#12097-122,<br><br>     Petitioner,<br><br>  v.<br><br>ESTELA DERR, WARDEN,<br><br>     Respondent. | CIVIL NO. 22-00541 JAO-RT<br><br>ORDER DENYING MOTION FOR<br>RECONSIDERATION, ECF NO. 39 |

**ORDER DENYING MOTION FOR RECONSIDERATION, ECF NO. 39**

  Before the Court is Petitioner Kaniu Huihui (Petitioner's) Motion for
Reconsideration of (1) October 30, 2023 Order on Petition for a Writ of Habeas
Corpus under 28 U.S.C. § 2241 (Docket #37) and (2) October 30, 2023 Order
Closing Case (Docket #38).  ECF No. 39.  Pursuant to Local Rule 7.1(c), the Court
elects to decide the Motion for Reconsideration without a hearing.  For the reasons
stated below, the Motion for Reconsideration is DENIED.

<h2 style="text-align:center">I.   BACKGROUND</h2>

  Petitioner initially filed a Petition for a Writ of Habeas Corpus under 28
U.S.C. § 2241 ("Petition") pro se on December 27, 2022.  ECF No. 1.  Because the
parties are familiar with the facts and procedural history relevant to this action, the
Court will not repeat it again here.  In short, Petitioner sought an order directing

the Federal Bureau of Prisons ("BOP") to apply her earned time credits ("ETC")

and her Good Time Credits ("GTC") under the First Step Act ("FSA").  The

central question was whether Petitioner could be indefinitely denied the ability to

earn FSA ETCs despite being sentenced on October 26, 2022 because she was a

"holdover inmate" at FDC Honolulu, meaning she was awaiting transportation to

the official detention facility where she would serve her sentence.  On June 20,

2023, the Court dismissed the Petition.  ECF No. 19 ("Order").  However, the

Court did order the BOP, if it had not already done so, to conduct a first

assessment and, if eligible, a second assessment, so that Petitioner could begin to

accrue ETCs.  *See id.*  These assessments help BOP identify a plan of action for an

individual to reduce their risk of recidivism by identifying targeted need areas, and

then designating certain programming or activities to address those needs, with the

amount of ETCs they can earn increasing after a second assessment.  *See* 18 U.S.C.

§ 3632(a), (b); *see also id.* § 3632(d)(4) (providing that an individual earns 10 days

of time credits for every 30 days of successful participation in evidence-based

recidivism reduction ("EBRR") programming or productive activities ("PAs") and

15 days for an individual "who, over 2 consecutive assessments, has not increased

their risk of recidivism").

BOP objected to the Court's Order to the extent it was required to do anything, *see* ECF No. 20, prompting the Court to hold a status conference, appoint counsel for Petitioner, and permit additional briefing by Petitioner, with a response from BOP, and a reply from Petitioner.  *See* ECF Nos. 22, 23, 30, 33, 36.   Based on that portion of the proceedings, it became clear that, during the pendency of this action, BOP re-designated Petitioner to FDC Honolulu on March 30, 2023, conducted her initial assessment on April 13, 2023, and conducted her second assessment on October 6, 2023.  *See* ECF No. 37 at 3.  Frustratingly for the Court and Petitioner, BOP failed to timely disclose these details, needlessly complicating these proceedings.  Regardless, the Court concluded in an order dated October 30, 2023 that the Petition was still properly dismissed because Petitioner had not cited authority that would allow the Court to grant Petitioner credit dating back to the date of her sentencing in October 2022 rather than beginning March 30, 2023 when she was re-designated to FDC Honolulu.  *See id.* at 3–5.  There was no evidence Petitioner was participating in qualifying EBRR programs or PAs during that time; the Court had no authority to reclassify the non-qualifying classes Petitioner was enrolled in during that time; and Petitioner cited no authority otherwise permitting the Court to credit her with what would amount to a presumption of participation during that time.  *See id.*

Petitioner now moves for reconsideration of that October 30, 2023 order.

## II.   LEGAL STANDARD

A motion for reconsideration under Federal Rule of Civil Procedure 59(e) should not be granted, "absent highly unusual circumstances, unless the district court": (1) "is presented with newly discovered evidence"; (2) has "committed clear error"; or (3) "if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).  Rule 59(e) "offers an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'"  *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted).  Rule 59(e) motions for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).  Indeed "[a] district court has discretion to decline to consider an issue raised for the first time in a motion for reconsideration." *Novato Fire Prot. Dist. v. United States*, 181 F.3d 1135, 1141 n.6 (9th Cir. 1999).

## III.   DISCUSSION

### A.   Email from Assistant Warden Tuttoilmondo

Petitioner argues that a November 24, 2023 email from Assistant Warden Tuttoilmondo at FDC Honolulu provides new evidence warranting reconsideration

because it contradicts the BOP's prior representations that Petitioner received her

initial assessment on April 13, 2023, and received her second assessment on

October 6, 2023.  In relevant part, the email states:

> We recently discovered a gap in the time credits calculation tool.
> When inmates, like yourself complete their self-assessments
> during pretrial incarceration, the application doesn't "see" it
> because it is looking for self-assessments completed by
> sentenced inmates. Additionally, the Trulincs systems is being
> worked on to account for this circumstance. It is not our desire to
> penalize any inmate for being proactive and doing the right thing.
> As soon as this is complete, the system will advance the date you
> completed your surveys to your designated date – thus giving
> your [sic] credit from day 1.

ECF No. 39-8 at 2.  According to Petitioner, the email is evidence that assessments

were completed before April 13, 2023, such that the assessment that occurred on

that date was a second assessment, meaning she should have been receiving ETCs

since the date of her sentencing (i.e., "from day 1"), and begun receiving 15 ETCs

for every 30 days of successful participation after April 13, 2023.  *See* ECF No. 39

at 6–10.  The Court disagrees.  BOP offers evidence that the self-assessments

referred to in the email were voluntary questionnaires Petitioner completed for the

purpose of assisting BOP with her initial classification (what the Court previously

stated was an "initial assessment on April 13, 2023," ECF No. 37 at 5) and

program review (what the Court previously stated was "her second assessment on

October 6, 2023," ECF No. 37 at 5).  *See* ECF No. 43-1 (Giddings Decl.) ¶¶ 9, 11–

15; ECF No. 43-2 (Tuttoilmondo Decl.) ¶¶ 5–6; ECF No. 43-9.  In other words,

Petitioner provided this information so that BOP could determine what programs Petitioner would be required to take to address her needs and to receive ETCs. *See id.* Nor does the Court find any inconsistency in the two declarations offered by BOP regarding "day 1"; instead, it credits that evidence as clarifying that BOP records would be corrected (due to a technical issue) to reflect that Petitioner had already completed those questionnaires pre-sentencing for purposes of evaluating FSA eligibility once her initial assessment was completed—not that she would automatically begin to receive ETCs from the date of sentencing. *See id.*

Ultimately, Petitioner has not shown reconsideration is warranted based on this "new evidence."

**B.  Employment**

Petitioner next claims reconsideration is warranted because she has been employed at the FDC Honolulu Commissary both before and after her sentencing, and so was eligible to receive ETCs as a result of that employment. First, Petitioner fails to explain why this information could not have been presented to the Court in connection with the previous round of supplemental briefing. Significantly, the government there argued that Petitioner did not participate in any qualifying EBRR programming or PAs between her sentencing (October 26, 2022) and re-designation (March 30, 2023) and the Court granted Petitioner (who is aware of her employment history, and was represented by counsel) leave to file a

reply where she could have addressed that argument, as well as her related new argument that denying her credit for this work amounts to an equal protection violation.  *See* ECF Nos. 30, 33, 36.  And so she cannot raise this new argument in the instant motion.  *See Kona Enters., Inc.*, 229 F.3d at 890.

Even if the Court considered this argument, it does not justify reconsideration.  Petitioner relies on statutory language indicating that qualifying EBRR programs "*may* include . . . a prison job, including through a prison work program," 18 U.S.C. § 3635(3)(C) (emphasis added), and PAs include an "activity that is designed to allow prisoners . . . to remain productive,"  18 U.S.C. § 3635(5).  But Petitioner cites no evidence that this means her work at FDC Honolulu pre- and post-sentencing *must* qualify under the FSA regime and, as this Court has already stated, it is in no position to reclassify work (or anything else) into approved EBRR programs or PAs when BOP has not so designated them.  *See* ECF No. 37 at 3–4.  The authority Petitioner cites supports the point that it is the BOP—not this Court—who determines which programs and activities qualify for ETCs.  *Poff v. Carr*, 2022 WL 2133871, at *6 (N.D. Tex. June 14, 2022), *aff'd*, 2023 WL 2240463 (5th Cir. Feb. 27, 2023) ("[T]he FSA requires the BOP to approve each program or activity and designate it as an EBRR program or productive activity.").  Other district courts have rejected similar arguments that because the BOP may designate some jobs to qualify for ETCs, this means a

petitioner's job necessarily qualifies. *See Ahlers v. United States Dep't of Just.*, 2022 WL 17569724, at *1 (D. Kan. Nov. 22, 2022). As the district court in *Ahlers* explained:

> There is no authority, however, requiring the BOP to recognize any employment or a particular activity as an EBRR program for which credit may be given. As shown by the evidence submitted by respondent, the BOP offers only particular programs for which prisoners are eligible for the credit, and petitioner's employment does not constitute an eligible program. Thus, because the BOP has discretion regarding which programs qualify for the credit, petitioner is not entitled to the credit he seeks here. [] Petitioner relies on the applicable regulation's definition of EBRR programs, but that definition provides only that such programs "may include" inmate work and employment opportunities; it does not require that all such opportunities be recognized as EBRR programs for which credit may be earned. *See* 28 C.F.R. § 523.41(a)(11). Petitioner has cited no authority requiring the BOP to award FSA time credits for petitioner's employment . . . , whether or not the BOP encouraged and approved that employment as part of petitioner's duties while on home confinement.

*Id.*

To the extent Petitioner contends this all amounts to an equal protection violation, *see* ECF No. 39 at 11–12, again she has failed to explain why that argument is properly before the Court when raised for the first time on a reconsideration motion. Nor has she shown that the issue has been properly exhausted. Even putting that aside, she offers no factual support for any equal protection claim, i.e., that she was treated differently than similarly situated individuals and there was no rational basis for doing so. *See Reeb v. Thomas*, 636

F.3d 1224, 1228 n.4 (9th Cir. 2011).  In fact, she fails to identify any similarly-situated inmate who received credit for the same employment.  Instead, her briefing—which includes excerpts from email correspondence with BOP—indicates that across all BOP institutions, inmates working jobs (like hers at the commissary) do not earn FSA credit.  *See* ECF No. 39 at 4 ("[I]nstitution work assignments, such as working in commissary, laundry services, food services, cleaning orderly, facilities maintenance orderly, etc., are not considered 'inmate work and employment opportunities' and do not address a work 'need' for purposes of PATTERN score.  Therefore, they are not included in the list of approved EBRR programs or PAs and do not result in accrual of FSA credits.  This is true BOP wide, regardless of the specific institution.").

For each of these reasons, then, reconsideration is not warranted based on Petitioner's employment at FDC Honolulu.

## C.     Programming/Classes

Petitioner's equal protection argument regarding certain classes not being offered at FDC Honolulu until April 2023 fails for similar reasons.  Again, the Court exercises its discretion to not address this argument, which could have been raised earlier in these proceedings and has not clearly been exhausted.  Even considering it, Petitioner cites no evidence—aside from attorney argument in a brief—that certain FSA qualifying programming was not offered at FDC Honolulu

until April 2023 "so it would have been impossible for [Petitioner] to take these courses." *See* ECF No. 39 at 13–14. And, again, she does not offer any factual support that certain EBRR programs and PAs were available at other BOP facilities and there was no rational basis for them not being available at FDC Honolulu. Finally, she offers no response to the evidence BOP has submitted indicating that, although certain qualifying EBRR programs and PAs were only available at FDC after April 2023, others were offered at FDC Honolulu before that time. *See* ECF No. 43-2 (Tuttoilmondo Decl.) ¶ 8; ECF No. 43-12. In short, Petitioner has not shown that the necessary programming eventually identified for Petitioner through her assessments was unavailable between October 26, 2022 and March 30, 2023 such that the Court must reconsider its prior order.

**D.    ServSafe Program**

On reply, Petitioner raises another new argument, claiming that she was eligible for ETCs earlier than March 2023 because she enrolled in the ServSafe FSA program in January or February of 2023, which she then completed in May 2023. *See* ECF No. 49 at 5. Because Petitioner offers no explanation for why this argument is only being raised now, and was not raised in any of the previous supplemental briefing (filed in September and October 2023) or even in her reconsideration motion (rather than on reply), she has not met her burden of demonstrating reconsideration is appropriate. In a similar vein, she has also not

shown that this issue has been properly exhausted.  Further, Petitioner offers no

evidence that enrollment in this program alone addresses all the needs eventually

identified in her initial assessment.  *See* ECF No. 44-2 at 3; ECF No. 44-3 at 3

(identifying "antisocial peers," "cognitions," and "finance/poverty" as needs in

April 2023).  The Court understands Petitioner's argument that BOP did not assess

her until April 2023, and no one counseled her that she needed to take FSA courses

in the meantime.  *See, e.g.*, ECF No. 49-2 (Huihui Decl.) ¶ 2.c.  But Petitioner still

has not cited any authority that would warrant the Court reconsidering its

determination that there is no evidence she was enrolled in EBRR programs or PAs

to address all the needs eventually identified in April 2023 (or, related to the

argument above, FDC Honolulu did not offer courses to address all those needs).

**E.    Parenting/Family Programming**

Finally, Petitioner raises yet another new issue with ETCs in her reply.  In its

opposition, BOP noted that, in November 2023, Petitioner was not participating in

all required programming, specifically as to a need for parenting/family

programming.  *See* ECF No. 43-2 (Tuttoilmondo Decl.) ¶¶ 9–10.  According to

BOP, the need for such programming was first identified at Petitioner's October

2023 program review, which the Court interprets to mean her second assessment.

*Id.*  And BOP reports that, although Petitioner had previously been enrolled in a

class to address that need, she requested to withdraw, and so for the month of

November 2023, she did not qualify for ETCs because she was not successfully participating in all necessary programming. *See id.*

According to Petitioner, however, she was enrolled in that program at the time of sentencing in October 2022, but requested to withdraw in November 2022 because, at that time, she had been designated to a different institution (FCI Greenville), and so presumed she would not be able to complete it before she left FDC Honolulu. *See* ECF No. 49-2 (Huihui Decl.) ¶ 2.b. She also states that she enrolled in it again sometime after that, but dropped it after confirming with her team that she did not need to be enrolled in it. *See id.* ¶¶ 2.g, 2.h. And, most importantly, she attests that she was never informed that this need changed from a "no" to "yes" in October 2023, although she was later informed that her needs had changed and they "were trying to fix it." *See id.* ¶¶ 2.i, 2.j.

Because this argument was raised for the first time on reply, the Court does not have the benefit of BOP's position on whether Petitioner was sufficiently informed of this change in needs. And, again, Petitioner has not shown that, as to this separate issue regarding family/parenting programming, she has exhausted her remedies such that it would be appropriate for the Court to weigh in now, and do so without a response from the BOP. *See* ECF No. 19 at 4–7 (discussing the exhaustion requirement generally, including the rationale that it may allow the agency to correct its own mistakes and avoid the need for judicial intervention);

*see also id.* at 18 ("To the extent Petitioner objects to any matter that was not raised in her December 27, 2022 Petition or any matter regarding BOP's handling of her credits after this Order, Petitioner must attempt to exhaust her administrative remedies before filing a petition in the Court."). This point is underscored by Petitioner's argument—which the Court will not pass on now—that BOP's own declarations are inconsistent with regard to whether calculations showing no credit for November were an error or the result of Petitioner not being enrolled in needed programming. *See* ECF No. 49 at 6.

The Court understands Petitioner's frustration that, based on BOP's conduct thus far in these proceedings, it feels as if the goalposts are constantly moving. Still, the Court is not convinced it can address this separate issue at this juncture. For that reason, the Court concludes Petitioner has not demonstrated reconsideration is warranted on this basis—although this does not foreclose Petitioner from seeking relief in the event she exhausts her remedies on this issue (or the others discussed above) in a manner that would permit BOP the opportunity to respond.[1]

---

[1] Along these lines, BOP seems to agree that, between March 30, 2023 and now (with the exception of the month of November) Petitioner should have been earning ETCs; however, it is unclear whether her record accurately reflects that. *See, e.g.*, ECF No. 49 at 7; *see also* ECF No. 43-1 (Giddings Decl.) ¶ 5 (acknowledging issues with these calculations that BOP "intends to fix"). The Court is not convinced this dispute—to the extent there even is one without knowing whether BOP has yet "fixed" this—is properly before it, and so again

## IV.    CONCLUSION

Based on the foregoing, the Motion for Reconsideration, ECF No. 39, is

DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, January 29, 2024.

Jill A. Otake
United States District Judge

CIVIL NO. 22-000541 JAO-KJM; *Huihui v. Derr*; ORDER DENYING MOTION
FOR RECONSIDERATION, ECF NO. 39

_____

directs Petitioner to exhaust her administrative remedies before raising additional
issues regarding her ETCs with the Court.

14